[No. AO18654. First Dist., Div. Five. Feb. 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN B. PRINGLE, Defendant and Appellant.

**COUNSEL**

William Holley, Edward Mahler and McManis & Holley for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster, John B. May and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING,** In this case we hold that a police officer cannot be convicted of wilfully refusing to make an arrest when he arrests a person charged with a criminal offense but thereafter releases her en route to the police station, even if the release was preceded by the parties engaging in sexual relations during the trip. A jury convicted San Jose Police Officer Kevin B. Pringle of refusal by a peace officer to receive or arrest a person charged with a criminal offense (Pen. Code, § 142), but acquitted him of assault under color of authority (Pen. Code, § 149). We reverse the judgment of conviction.

On January 7, 1982, at 12:11 a.m., San Jose Police Sergeant David Longaker detained 19-year-old Sandra M.[1] on suspicion of driving while intox-

---

[1]We use Ms. M's first name in this opinion to avoid any possible embarrassment to her.

icated. She was speeding and driving erratically. Sergeant Longaker made a radio request for a drunk driving patrol car. Officer Pringle responded.

Pringle arrived on the scene at 12:13 a.m. He conducted field sobriety tests, which Sandra failed. The officers concluded that she was legally intoxicated. Longaker told Pringle to "take her in and process her."

Pringle announced that Sandra was under arrest for driving while intoxicated. He handcuffed her and placed her in the front seat of his patrol car. (The car did not have a partition between the front and back seats.) He began driving, purportedly to take Sandra to the police station.

At this point the trial testimony of Pringle and Sandra diverged. Both agreed that Pringle drove to a remote area, removed Sandra's handcuffs, and had sexual intercourse with her. Sandra testified that after Pringle started driving he said nothing to her; Pringle stopped the car and asked her "if I gave head;" she responded that she did not; without any further verbal exchange he removed the handcuffs and her clothes and engaged in an act of sexual intercourse, Sandra not resisting because "I am afraid of guns." Pringle testified that while he was driving Sandra propositioned him; she said, "I'd like to make love with you, would you like to make love with me?" and asked him to "tell me what you want;" he responded by suggesting an act of fellatio, with which she complied; she removed her own clothes; after a period of foreplay they had consensual sexual intercourse. The jury apparently disbelieved Sandra, as it acquitted Pringle of the assault charge.

After the sexual encounter ended, Pringle drove Sandra to her boyfriend's house, following her directions. He released her and drove away. Sandra made no claim that Pringle had agreed to have sexual intercourse with her in exchange for her release.

Pringle contends that the trial court should have granted his motions for acquittal as to the charge of violating Penal Code section 142. Section 142, subdivision (a), provided: "Any peace officer who has the authority *to receive or arrest a person charged with a criminal offense and wilfully refuses to receive or arrest such person* shall be punished by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.) Pringle contends that there was no evidence that he refused "to receive or arrest a person charged with a criminal offense." He argues that once he announced Sandra's arrest, handcuffed her, and placed her in the patrol car for transportation to the police station his conduct was no longer governed by section 142, but was governed by Penal

Code section 849. The latter statute affords an officer discretion to release a person arrested without a warrant if the officer "is satisfied that there are insufficient grounds for making a criminal complaint." (Pen. Code, § 849, subd. (b)(1).) Pringle argues that he was subject only to administrative discipline for violating or neglecting his official duty (Pen. Code, § 661) by abusing his discretion under section 849.[2]

Respondent concedes that Pringle "arrested" Sandra within the meaning of section 142, but argues that he nevertheless violated section 142 by failing to "receive" Sandra after the arrest. The argument is based on a very broad construction of the word receive, which respondent defines variously as reception of the arrestee for the purpose of "producing her before a magistrate, clerk, or jail facility officer" and "repose in custody after delivery until release is authorized by law."

The issue, therefore, is how to construe the word receive in section 142. Resolution of this issue is aided by consideration of the first part of the statute as it read from its enactment in 1872 until it was rewritten in 1970: "Every sheriff, coroner, keeper of a jail, constable, or other peace officer, who wilfully refuses to receive or arrest any person charged with a criminal offense, is punishable . . . ." (Former Pen. Code, § 142, first amended in 1970 by Stats. 1970, ch. 829, § 1.1, p. 1563.)[3] The word receive in the 1872 statute seems most logically to have referred only to the duty of jailers and persons performing like functions to receive prisoners and the duty of police officers to receive persons arrested by citizens, with the word "arrest" logically referring to the similar duty of police officers to make arrests. This construction is supported by the fact that the only recorded litigation involving section 142 has occurred in situations involving the duty of jailers to receive prisoners (see Comment, *Some Proposals for Modernizing the Law of Arrest* (1951) 39 Cal.L.R. 96, 103) and the duty of peace officers to receive persons arrested by citizens (e.g., *Kinney v. County of Contra Costa* (1970) 8 Cal.App.3d 761 [87 Cal.Rptr. 638]; *Shakespeare v. City of Pasadena* (1964) 230 Cal.App.2d 375, 382 [40 Cal.Rptr. 863]).

Perhaps more significant is the fact that the broad construction urged by respondent would create an untenable conflict with Penal Code section 849,

---

[2]Pringle, subsequent to this incident being brought to the attention of his supervisors, resigned from the police force.

[3]The 1872 statute was derived from an 1850 law that provided, "If any Sheriff, Coroner, Keeper of a Jail, Constable, or other officer, shall wilfully refuse to receive or arrest any person charged with a criminal offense, such Sheriff, Coroner, Jailor, Constable, or other officer so offending, shall, on conviction, be fined in any sum not exceeding five thousand dollars, and imprisoned in the county jail not exceeding five years." (Stats. 1850, ch. 99, § 100.)

the purpose of which is to vest peace officers with discretion to release persons arrested by officers or citizens "when the situation and circumstances dictate." (52 Ops.Atty.Gen. 65, 68 (1969).) To construe section 142 as prescribing criminal sanctions for release of an arrestee before "release is authorized by law," as respondent urges, would result in sanctions for an *improper* exercise of discretion under section 849. This would draw such a tenuous line between the valid exercise of discretion under section 849 and the violation of section 142 (the sole determining factor being the propriety of the officer's "satisfaction" as to whether there were sufficient grounds for making a criminal complaint) that few officers would risk criminal sanctions by exercising their discretion under section 849.

Ultimately, the only basis urged by respondent for adding the concepts of "retention" and "production before a magistrate, clerk, or jail facility officer" to the word "receive" in section 142 is that such broad construction is necessary to ensure that arrestees are held in custody until disposed of in a lawful manner. Implicit in this argument is the proposition that because no criminal statute was directly applicable to Pringle's wrongdoing, the most closely related statute should be stretched to fit the facts of the case. But Pringle *could* have been prosecuted under a directly applicable statute. Upon arresting Sandra for driving under the influence, he was statutorily required to take her without delay before a magistrate (Veh. Code, § 40302) or, if a magistrate was unavailable, before a magistrate's clerk or the officer in charge of the most accessible jail facility (Veh. Code, § 40307). His omission to perform these duties was made a crime by Government Code section 1222, which provides, "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor."[4] Pringle was prosecuted under the wrong statute.

We severely condemn Officer Pringle's conduct. Abhorrence of his conduct, however, does not justify or permit conviction under an inapplicable criminal statute.

In short, Pringle discharged his duties under Penal Code section 142 when he arrested Sandra. He may have violated Government Code section 1222

---

[4]Pringle was a "public officer" within the meaning of Government Code section 1222. The statute was derived almost verbatim from former Penal Code section 176 (enacted 1872 and repealed by Stats. 1943, ch. 134, § 500003, p. 1010), which the Penal Code of 1872 makes clear was applicable to peace officers. (See note, Anno. Pen. Code of Cal. (1872 ed.) § 145, pp. 66-67 [statute making delay in taking arrestee before magistrate a misdemeanor was supplementary to former section 176 in that section 176 did not apply to citizens' arrests].)

when he subsequently released her without taking her before a magistrate, clerk, or jail facility officer; however, he was not prosecuted under that statute. The trial court should have directed a verdict of acquittal on the charge of violation of Penal Code section 142.

The judgment is reversed.

Low, P. J., and Haning, J., concurred.