747 P.2d 262
**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Robert TRUJILLO,**
**Defendant–Appellant.**

**No. 9819.**

Court of Appeals of New Mexico.

Nov. 17, 1987.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from a judgment by jury verdict convicting him of escape from the custody of a peace officer, contrary to NMSA 1978, Section 30–22–10 (Repl.Pamp. 1984). Defendant briefs two issues: (1) whether there was sufficient evidence to support the verdict; and (2) whether defendant was denied effective assistance of counsel. The arguments, however, focus on the propriety of the charge. We determine that, because the charge of violation of Section 30–22–10 was improper, the trial court lacked jurisdiction to convict and sentence defendant. We, therefore, reverse the conviction on that basis. *See State v. McNeece*, 82 N.M. 345, 481 P.2d 707 (Ct. App.1971) (conviction and sentence under wrong statute jurisdictional).

There is no real dispute as to the pertinent facts concerning defendant's escape. Defendant was jailed pending trial on criminal charges in the Santa Fe County Detention Center. Under order of the district court, Santa Fe County Sheriff's officers transported defendant from the jail to the Forensic Treatment Unit (FTU) of the State Hospital in Las Vegas, New Mexico, for evaluation prior to trial. Sheriff's officers placed defendant in the custody of hospital staff. Defendant escaped from the hospital about six weeks after arrival and was recaptured a day later by San Miguel County Sheriff's officers and state police. Defendant was returned to the hospital, where he continued to be evaluated, and was then transported back to the jail by the Santa Fe County Sheriff.

Our review of the proceedings indicates all of the participants at trial thought that the question of whether defendant could be found guilty of escape from a peace officer, on the undisputed facts of this case, had been settled by New Mexico case law. Contrary to the assumptions made by both parties and the trial court, interpretation of Section 30–22–10 presents an issue of first impression.

Penal statutes must be strictly construed, and the legislative definition of crimes is not to be broadened. *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967). "Statutes are to be given effect as written and, where free from ambiguity, there is no room for construction." *State v. Greyeyes*, 105 N.M. 549, 553, 734 P.2d 789, 793 (Ct.App.1987). With those principles in mind, we hold that the terms of Section 30–22–10 do not describe the facts and circumstances of defendant's escape; therefore, we conclude that defendant was charged under the wrong provision.

We rely upon the basic principle that it is the legislature's function and prerogative to define crimes. *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971); *State v. Dennis*, 80 N.M. 262, 454 P.2d 276 (Ct.App. 1969). Of significance, the legislature has attached criminal penalty to escape under four separate statutes, using different terms and describing different circumstances under which escape is punishable. *See* NMSA 1978, §§ 30–22–8 (Repl.Pamp.1984) (escape from jail); 30–22–9 (Repl.Pamp. 1984) (escape from penitentiary); 30–22–10 (escape from a peace officer); and 33–2–46 (Repl.Pamp.1987) (escape from inmate release program). The legislature has chosen to define distinguishable offenses bearing different essential elements and varying penalties. *See State v. Garcia*, 98 N.M. 585, 651 P.2d 120 (Ct.App.1982) (discussion of legislative history of escape statutes). The elements of these separately defined offenses differ as to the nature of the authority under which the offender is confined or in custody and, with the exception of Section 30–22–10, the place from which escape is made.

Section 30–22–10, the statute under which defendant was charged and tried, provides a criminal penalty for escape from the custody of a peace officer and describes the offense:

Escape from custody of a peace officer consists of any person who shall have been placed under lawful arrest for the commission or alleged commission of any

felony, unlawfully escaping or attempting to escape *from the custody or control* of any peace officer.

Whoever commits escape from custody of a peace officer is guilty of a fourth degree felony.

(Emphasis added.) This case requires us to interpret the terms underscored above.

The state does not ask this court to find that the mental health workers at FTU are "peace officers." *See* NMSA 1978, § 30–1–12(C) (Repl.Pamp.1984) (defining "peace officer"). *Cf. State v. Tabaha,* 103 N.M. 789, 714 P.2d 1010 (Ct.App.1986) (juvenile correctional officers not "peace officers" for purpose of statute proscribing battery upon peace officer under statutory definition). Nor does the state dispute that defendant was in the actual physical custody of the sheriff only temporarily in order to comply with the district court's order that he be transferred to FTU and then returned to the jail after evaluation. *Cf. State v. Pitts,* 102 N.M. 747, 700 P.2d 650 (Ct.App.1985) (defendant "lawfully committed to jail" under order that he be transferred from children's court to district court). Rather, the state urges us to find that defendant was in the "constructive custody" of the Santa Fe County Sheriff's Office during the time he was committed to the FTU.

The state argues that the term "custody," as it is used in Section 30–22–10, is not limited to physical or actual custody, but is intended to extend to legal or constructive custody as well. In view of the narrow statutory definition of the term "peace officer" and the absence of any language that would extend the terms "custody or control," as described in Section 30–22–10, we find the interpretation urged by the state overly broad.

We have interpreted Section 30–22–8 to describe escape from a place other than the actual confines of the jail to which a defendant has been committed at the time of escape, under the rule of "constructive custody." In *State v. Gilman,* 97 N.M. 67, 636 P.2d 886 (Ct.App.1981), this court held that defendant could be found guilty of "escape from jail" when he escaped while performing labor outside the jail. We looked to the terms of Section 30–22–8 and held: "Reason and common sense require us to recognize that the statute punishes one who escapes custody while lawfully sentenced to jail." *Id.* at 68, 636 P.2d at 887. *See also State v. Weaver,* 83 N.M. 362, 492 P.2d 144 (Ct.App.1971) (discussing, though not adopting, rule of "constructive custody"). In *State v. Coleman,* 101 N.M. 252, 680 P.2d 633 (Ct.App.1984), we established that one does not have to escape from the physical confines of the jail itself in order to be found guilty of escape from jail. Coleman had escaped from a work-release program while being held in jail on a criminal charge. We agree with the state that the facts and circumstances of *Coleman* are analogous to those of the case before us. Contrary to the state's attempt to analogize the cases, however, Coleman was appropriately charged with escape from jail.

Nor do we agree with the state's argument that we should apply the *Gilman* holding to this case and extend the "custody or control" of Section 30–22–10 beyond the express limitation of the statute. The common sense of *Gilman* is that a person "under lawful commitment to any jail" remains committed, though temporarily released from the confines of the jail. *See also State v. Martin,* 94 N.M. 251, 609 P.2d 333 (Ct.App.1980) (charge of escape from penitentiary proper though defendant actually escaped from county jail because defendant had been "lawfully committed to the penitentiary"). That rationale does not apply to escape from a peace officer while "under lawful arrest." Common sense does not compel us to hold that a person transferred from the custody of a "peace officer" to another person necessarily continues "under lawful arrest."

It is significant that the legislature defined escape from a peace officer as escape from the "custody or control" of a peace officer. Also, by using the term "under lawful arrest" in Section 30–22–10, the legislature, in defining the crime of escape from a peace officer, contemplated different circumstances than escape from jail.

We will not broaden the legislature's intent to include constructive custody or control as the state urges. Section 30–22–10 applies only to those who are in the actual custody or control of a peace officer while under arrest.

The state contends that this interpretation of Section 30–22–10 will allow prisoners who escape, after being transferred from a jail to FTU for evaluation or to any hospital for treatment, to avoid penalty. *See Ex parte DeVore*, 18 N.M. 246, 136 P. 47 (1913) (penal statutes should not be unnaturally construed to work exemptions from their penalties). We disagree. If defendant had been charged under the proper statute, he may well have been penalized. As with any other criminal offense, however, the charge must be appropriate and the prosecution must prove each essential element of the crime as defined by statute. *See State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984).

We find that the conviction and sentence cannot stand because defendant was charged under an inapplicable statute and, therefore, the trial court proceeded without jurisdiction. *State v. McNeece*. We do not reach the issues stated in defendant's docketing statement and briefed by the parties. We reverse defendant's conviction and sentence, and remand the cause with instructions to dismiss the charge against defendant.

Defendant requested oral argument. The panel deems oral argument unnecessary; therefore, the request is denied. *See Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.