COLDWELL BANKER—FIRST REAL-
TY, INC., Plaintiff and Appellee,

v.

MEIDE & SON, INCORPORATED, Jer-
ry L. Meide and Sandra A. Meide,
Defendants and Appellants.

Civ. No. 870109.

Supreme Court of North Dakota.

March 29, 1988.

DeMars, Turman & Johnson, Ltd., Fargo, for plaintiff and appellee; argued by Joseph A. Turman.

Gunhus, Grinnell, Klinger, Swenson & Guy, Fargo, for defendants and appellants; argued by Craig R. Campbell.

LEVINE, Justice.

This case involves the validity of a liquidated damages clause in an exclusive real estate listing agreement. Meide & Son appeals from a judgment of the Cass County district court which enforced the clause and awarded Coldwell Banker—First Realty, Inc. (Coldwell Banker) $232,780.00 plus interest and costs. We affirm.

Meide & Son is a construction company based in Wahpeton, North Dakota. Jerome Meide (Meide) joined his father's construction business in 1962 and is now president of Meide & Son. Fargo Insurance Agency (Fargo Insurance) enjoyed a long-standing business relationship with Meide & Son. In the summer of 1977, the Fargo Insurance real estate division contacted Meide about developing a tract of south Fargo land, owned by Meide & Son. The parties negotiated an agreement to develop the south Fargo tract, known as the South Meadows division. The development agreement provided that Meide & Son would develop the property and the Fargo Insurance real estate subdivision would exclusively sell and manage the developed land. The agreement provided for damages in the event of breach as follows:

"This agreement may be terminated only in accordance with the following terms and conditions:

.    .    .    .    .

"C. By Developer, upon giving Broker written notice thereof at least thirty days in advance of the termination date. In the event of termination by Developer, Broker shall be entitled to liquidated damages as follows:

1) If the termination is effected prior to full execution of the development plan and sale of those buildings intended to be sold, Broker shall receive an amount equal to the Sales Commissions which would have been earned if the agreement had been fully executed, less the amount of promotional and advertising expenses budgeted but unexpended;

..."

Meide was given time to examine the agreement, and several changes were made at his request. Meide and Fargo Insurance signed the development agreement October 14, 1977.

In the spring of 1978 the city of Fargo approved a planned unit development (PUD) plat for the South Meadow subdivision. Meide & Son and Fargo Insurance approved and adopted the PUD plat as the development plan. Meide & Son followed the PUD plat in constructing those buildings which were completed. The PUD plat was renewed upon expiration, and with minor cosmetic changes was complied with even after the termination of the development agreement.

On September 20, 1978, Fargo Insurance assigned its interest in the development agreement to Coldwell Banker, with the consent of Meide & Son.

From 1980 until late 1982, marketing success was minimal due to a severe depression in the housing market and escalation of interest rates. However, in the latter part of 1982 through the early months of 1983 there was a strong rebound in the commercial apartment housing market.

When the housing market improved, Meide & Son prepared cost estimates for unbuilt units and applied for and received minor changes in the PUD plat. It also applied for and received building permits, and proposed to the Fargo Housing Authority sale of the remaining South Meadows property as HUD-subsidized housing.

On March 30, 1983, Meide & Son's attorney sent Fargo Insurance a letter terminating the development agreement. Within two months, Meide & Son sold all remaining units of the South Meadows subdivision. Coldwell Banker sued Meide & Son for liquidated damages for breach of the development agreement.

After a bench trial, the trial court determined that although Meide's experience with development agreements and listing properties with a realtor was "somewhat minimal," he was a sophisticated businessman capable of reading and understanding the terms of the development agreement, had negotiated and performed many government contracts and public and private housing projects, and was generally aware of the business of contracting, developing and selling property. The court found that Meide & Son terminated the development agreement in order to avoid paying commissions to Coldwell Banker.

The court found that as a result of the breach, Coldwell Banker suffered "probable loss of good will and continuing business relationships," "loss of revenue from management fees," "loss of future sales as a result of potential sale referrals from managing the contracts, and resultant contact with the individuals who would rent the apartments in the various units during the time of management," and "potential damage to the reputation of the plaintiff due to his failure to complete the project in the community." The court found that these damages were difficult, if not impossible, to estimate. The court also determined that Coldwell Banker had substantially performed under the development agreement and that Meide had accepted the benefits of that performance.[1]

Judgment was entered against Meide & Son for damages under the liquidated damages clause of the development agreement. Meide & Son appealed, raising three issues: (1) whether Coldwell Banker failed to prove that the amount stipulated as damages for breach of the development agreement bears a reasonable relation to the probable damages and is not disproportionate to any damages reasonably to be anticipated; (2) whether the liquidated damages clause is vague and ambiguous for lack of a sum certain and, therefore, unenforceable; (3) whether the trial court clearly erred in finding that Coldwell Banker did not act fraudulently or exercise undue influence.

## I. REASONABLE RELATION TO PROBABLE DAMAGES

A party seeking to enforce a liquidated damages clause bears the burden of proving that the claim is valid as an exception to the general prohibition of § 9–08–04, NDCC. *Federal Land Bank v. Woell*, 415 N.W.2d 500 (N.D.1987); *City of Fargo v. Case Development Co.*, 401 N.W.2d 529 (N.D.1987). Section 9–08–04, NDCC, states:

"Every contract by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation is determined in anticipation thereof is to that extent void, except that the parties may agree therein upon an

---

1. In *Kruger v. Soreide*, 246 N.W.2d 764 (N.D. 1976), this court held that real estate agents claiming damages under exclusive listing agreements are required to prove consideration for the contract by performance of services. *See also Bismarck Realty v. Folden*, 354 N.W.2d 636, 641 (N.D.1984).

amount presumed to be the damage sustained by a breach in cases where it would be impracticable or extremely difficult to fix the actual damage."

■ Section 9-08-04, NDCC, contains a rebuttable presumption that the amount set forth as liquidated damages constitutes the actual loss or damage sustained by breach of the contract. *Eddy v. Lee*, 312 N.W.2d 326 (N.D.1981). In order to raise the presumption, the party wishing to rely upon it must introduce credible evidence. *Eddy v. Lee*, 312 N.W.2d at 330. The foundational facts necessary to establish the existence of the presumption are: (1) that it appears that at the time the contract was made the damages in the event of breach will be incapable or very difficult of accurate estimation; (2) that there was a reasonable endeavor by the parties to fix their compensation; and (3) that the amount stipulated bears a reasonable relation to the probable damages and is not disproportionate to any damages reasonably to be anticipated. *Ibid; Bowbells Public School Dist. v. Walker*, 231 N.W.2d 173, 175, 176 (N.D.1975); *Hofer v. W.M. Scott Livestock Co.*, 201 N.W.2d 410 (N.D. 1972).

The trial court found that all three foundational facts of *Eddy v. Lee* were established. While conceding the existence of the first two foundational facts, Meide & Son argues that Coldwell Banker failed to establish the third foundational fact, thereby making the liquidated damages provision void as a penalty under § 9-08-04, NDCC.

■ Whether a foundational fact exists is a question of fact subject to the clearly erroneous standard of review. *Eddy v. Lee*, 312 N.W.2d at 331. Findings

of fact are not clearly erroneous unless there is no support in the evidence or, although there may be some supporting evidence for it, this court is left with a definite and firm conviction that a mistake has been made. *Tom Buechler Constr. v. City of Williston*, 413 N.W.2d 336 (N.D. 1987). It has been suggested that the greater the difficulty encountered by the parties in estimating the damages which might arise from a breach, the greater should be the range of estimates which the court should uphold as reasonable. *Better Food Markets, Inc. v. American Dist. Tel. Co.*, 253 P.2d 10 (Cal.1953) (cited with approval in *Hofer v. W.M. Scott Livestock Co.*, 201 N.W.2d at 415); 3 Restatement (Second) of Contracts § 356 comment b (1981).

■ There is evidence to support the trial court's finding that the amount of liquidated damages was reasonably related to the probable damages and not disproportionate to any damages reasonably anticipated, when viewed from the time of contracting. The trial court found the amount of damages stipulated to be $232,780, a sum equal to the sales commissions due under the contract,[2] or "gross sales commissions," calculated upon a reasonable selling price for the unsold units established by uncontroverted testimony. There was testimony that Coldwell Banker would have received $352,000 in management fees had Meide performed the contract.[3] Thus, Coldwell Banker produced evidence showing that the amount of liquidated damages was not excessive when compared to reasonably anticipated and probable damages.[4] We conclude that the trial court did not clearly err in finding the establishment of the third foundational fact of *Eddy v. Lee*.

2. The trial court used the percentages in paragraph 3D of the development agreement to arrive at the amount of damages. Under paragraph 3D of the development agreement, Coldwell Banker was to receive "as compensation for its efforts in the sale of each part of the property ... a commission of 6% of the gross sales price for each condominium and a commission of 5% of the gross sales price for each apartment building."

3. Evidence of a probable amount of actual damages is relevant to consider when assessing the reasonableness of a liquidated damages clause at the time of contracting. Dobbs, *Remedies* § 12.5 at 822 (1973).

4. Coldwell Banker does not claim actual damages, but seeks relief only under the liquidated damages clause.

Meide & Son, relying on § 32–03–36,[5] argues that the trial court erred in awarding greater damages than would have been realized by full performance of the contract. It contends that without a breach, Coldwell Banker would have been entitled only to its net sales commissions in the amount of $34,917.00.[6] However, Meide & Son overlooks other damages, extremely difficult or impracticable to ascertain, yet flowing from the breach. Coldwell Banker suffered damages for loss of management fees, sales referrals, business contact with tenants, and goodwill, according to the trial court's findings. We are therefore unpersuaded that the only actual damages arising from the breach would be loss of the net sales commissions.

## II. VAGUENESS

### A. Sum Certain

Meide & Son argues that a valid liquidated damages clause must state as stipulated damages a sum which is definite or certain and which needs no extrinsic evidence for its determination. This argument calls upon us to interpret the language of our liquidated damages statute, NDCC § 9–08–04. Under the statute, contractual provisions which determine damages in the event of breach, are void

> "except that the parties may agree therein upon *an amount* presumed to be the damage sustained by a breach in cases where it would be impracticable or extremely difficult to fix the actual damage." NDCC § 9–08–04. [Emphasis added.]

Meide & Son asserts that, because the liquidated damages clause provides a formula for calculating damages instead of a certain sum of money, it does not set forth "an amount" as required by § 9–08–04 and is, therefore, void.

■ Where the legislature's intent is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction thereof, and the court will follow the rule of literal interpretation in applying the words of the statute. *State for Benefit of Workmen's Compensation Fund v. E.W. Wylie Co.*, 79 N.D. 471, 58 N.W.2d 76 (1953). In interpreting a statute, words must be given their plain, ordinary and commonly understood meaning, and consideration should be given to the ordinary sense of statutory words, the context in which they are used, and the purpose which prompted their enactment. *Stutsman County v. State Historical Society*, 371 N.W.2d 321 (N.D.1985); NDCC § 1–02–02.

We cannot discern from the term "amount" whether the legislature intended to except from its prohibition of liquidated damage provisions, use of a formula for calculating damages in the event of breach. The ordinary meaning of "amount" as garnered from Webster's Unabridged Dictionary does not resolve the problem:

> "1 a: the total number or quantity: aggregate < the [amount] of the fine is doubled ≥: sum, number < add the same [amount] to each column > < the [amount] of the policy is 10,000 dollars >" Webster's Third New International Dictionary.

This "ordinary meaning" leaves uncertain whether "an amount" may be stated in terms of a formula.

■ Since a plain reading of the statute according to the ordinary meaning of its terms fails to resolve the question, we conclude the statute is ambiguous and in need of interpretation. *See Barnes City Education Association v. Barnes City Special Education Board*, 276 N.W.2d 247, 251

---

**5.** NDCC § 32–03–36 reads:
"Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases wherein exemplary damages or penal damages are authorized, and in the cases specified in sections 32–03–19, 32–03–26, and 36–21–13."

**6.** There was testimony that 85–95% of the gross sales commissions received by Coldwell Banker does not constitute profit, but constitutes expenses incurred by performance. Meide argues, therefore, that the amount payable under the liquidated damages provision is the commissions after expenses were paid, *i.e.,* 15% of the gross sales commissions.

(N.D.1979). When the meaning of a word in a statute is doubtful, it is appropriate to refer to related legislation to determine the sense in which the word was employed in the particular statute. *Grabow v. Bergeth*, 229 N.W. 282, Syl. 3 (N.D.1930); *Matter of Estate of Knudsen*, 342 N.W.2d 387, 390 (N.D.1984).

NDCC § 41–02–97(1) (UCC 2–718) is a comparable liquidated damages statute governing contracts for the sale of goods between merchants. It states:

"1. Damages for breach by either party may be liquidated in the agreement but at *an amount* which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty." [Emphasis added.]

In *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494 (N.D.1974) we at least implicitly construed the word "amount" in NDCC § 41–02–97(1) as authorizing a liquidated damages clause to provide a formula for calculating damages, not a precise sum. We upheld the clause despite its use of a formula and not a dollar amount, and despite the need for extrinsic evidence. We relied on § 41–02–97 in concluding that the liquidated damages clause was "designed to provide an agreed method of computing loss in the event of breach. See Section 41–02–97, N.D.C.C. (Section 2–718, U.C.C.)." *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d at 498.

■ We discern no legislative intent to restrict the meaning of "amount" to a sum certain in § 9–08–04, while giving it a more expansive meaning in § 41–02–97(1), NDCC. Because we believe the legislature used the word "amount" in the same sense in § 9–08–04 as it did in § 41–02–97, we construe § 9–08–04 as authorizing the use of an agreed method of computing loss in the event of breach.

Further, we note that when the legislature meant "sum certain" it used that term, rather than "amount."[7] On the one hand, the legislature used the word "amount" in § 9–08–04 instead of the term "sum certain." On the other hand, the term "sum certain," not "amount," is found in NDCC § 41–02–06 (UCC 3–106) as a requirement for negotiable instruments, while "amount," rather than "sum certain," is the standard for liquidated damages provisions in § 41–02–97(1) (UCC 2–718). The legislature thus has differentiated between the two terms and we give effect to that distinction.

We consider, finally, the usefulness and efficacy of liquidated damages provisions in general, and in particular, the great difficulty presented by this case in estimating the damages suffered from such elements as good will and lost business opportunity. It would be ludicrous to conclude that the legislature, after making the extreme difficulty of ascertaining damages a prerequisite for valid liquidated damages, would then insist upon a specific or precise quantification of those damages without resort to a more reliable method of computation. We construe a statute to avoid absurd results. *Stutsman County v. State Historical Society*, 371 N.W.2d at 325. We hold, therefore, that under NDCC § 9–08–04, a liquidated damages provision need not state a sum certain, but may provide for damages to be calculated with the aid of extrinsic evidence. *Accord, Knutton v. Cofield*, 273 N.C. 355, 160 S.E.2d 29 (1968); *Twentieth Century-Fox Film Corp. v. Woods Amusement Corp.*, 304 F.Supp. 23 (N.D.Ill.1969).

**B. Agreement to Agree**

Meide & Son also argues that the liquidated damages clause is void and unenforceable as an agreement to agree in the future. It contends that the liquidated damages provision refers to buildings and sale prices, the plans and values of which

---

**7.** So did this court. Rule 55(a)(1), NDRCivP, authorizes default judgment in certain circumstances when the claim is "for a sum certain or for a sum which can by computation be made certain."

were not agreed upon at the time the contract was executed.

■ Meide & Son's reliance on the principle that "agreements to agree" are void, is misplaced. In those cases where agreements to agree were invalidated, the parties failed to agree in the future. *See Super Hooper, Inc. v. Dietrich & Sons, Inc.*, 347 N.W.2d 152 (N.D.1984); *Opdyke Investment Co. v. Norris Grain Co.*, 413 Mich. 354, 320 N.W.2d 836 (1982); and *Deadwood Lodge No. 508 v. Albert*, 319 N.W.2d 823 (S.D.1982).

In the present case, however, the parties fulfilled their promises to agree. The PUD plat removed any uncertainty about the buildings to be sold. Nor does the clause fail as an unfulfilled agreement to agree on a price term. NDCC § 9–07–08 states:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

Section 9–05–07, NDCC, states:

"When a contract does not determine the amount of the consideration nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract reasonably is worth."

*See Drees Farming Ass'n v. Thompson*, 246 N.W.2d 883 (N.D.1976) (option to renew lease for unspecified rent enforceable for a reasonable rental value). Based upon the evidence, the trial court determined a reasonable sale price for the buildings at each phase of the development plan. We thus conclude the liquidated damage clause is not unenforceably vague as an agreement to agree.

Meide & Son's final argument is that the trial court clearly erred in finding neither fraud nor undue influence. Our review of the record does not convince us that a mistake was made.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.