**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**David SHOLY, Defendant and Appellant.**

Crim. No. 880064.

Supreme Court of North Dakota.

Oct. 18, 1988.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee.

David Sholy, Bismarck, defendant and appellant, pro se.

VANDE WALLE, Justice.

David Sholy was convicted in municipal court, City of Bismarck, of violating a "dog at large" ordinance and he appealed his conviction to the county court. After having been found guilty in county court, Sholy appealed to this court. The only issue on appeal is whether the ordinance requires some level of culpability.

Bismarck City Ordinance 3-03-05 provides, in part:

"1. It is unlawful for any owner or keeper of a dog to permit the animal to be at large."

The question, then, is whether the word "permit" as used in Bismarck City Ordinance 3-03-05 requires that some level of culpability be shown. The word "permit" is nowhere defined in Title 3.

Courts generally apply the same rules of construction to municipal ordinances as they do to State statutes. *City of Minot v. Central Ave. News, Inc.*, 308 N.W.2d 851 (N.D.1981), *appeal dismissed* 454 U.S. 1117, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981). Section 1-02-02, N.D.C.C., provides that "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, ..."

The word "permit" has been interpreted by the courts to require culpability. See, e.g., *LaBelle v. Powers Mercantile*, 103 Minn. 515, 114 N.W. 1131 (1908) [elevator operator did not "permit" young boy to

---

operate the elevator because the boy was, at best, a casual interloper]; *Lemery v. Leonard*, 99 Or. 670, 677, 196 P. 376, 378 (1921) ["[O]ne cannot be said to have permitted a thing of which he has no knowledge or means of knowledge, so, that, if his animals escape from his inclosure without his knowledge or negligence, he does not come within the prohibitions of the statute against 'permitting' his stock to be at large. To 'permit' means to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent or authorization"]. [Citations omitted.]

On the other hand, numerous courts have held that "permit" does not require a culpable state of mind. See, e.g., *Wittenberg v. Bd. of Liquor Control*, 80 N.E.2d 711, 717 (Ohio Ct.App.1948) ["The word 'permit' is a word of considerable elasticity; it lacks clear-cut and precise definiteness. As defined by Webster and others, 'permit' implies no affirmative act. It involves no intent. It is mere passivity, abstaining from preventive action" (citations omitted) ]; *Marcum v. Bellomy*, 157 W.Va. 636, 203 S.E.2d 367 (1974) [A dog is "permitted" to run at large simply if he is not properly secured].

From the above-cited cases, it is evident that "permit" can be construed either to require or not require a culpable mind. But it is a well-settled rule of statutory construction that penal statutes should be strictly construed in favor of the defendant and against the government. *State v. Hogie*, 424 N.W.2d 630 (N.D.1988); *State v. Sheldon*, 312 N.W.2d 367, 369 (N.D.1981). See also *State v. Fargo Bottling Works Co.*, 19 N.D. 396, 124 N.W. 387 (1910). Because the word "permit" is capable of being construed to require culpability, we construe the meaning of "permit" to require some level of culpability.

Even if we were not to construe the ordinance in favor of Sholy, our conclusion would be the same. "Whether an offense is punishable without proof of intent, knowledge, willfulness, or negligence is a question of legislative intent to be determined by the language of the statute in connection with its manifest purpose and design." *State v. Olson*, 356 N.W.2d 110, 112 (N.D.1984). All ordinances are to be construed together, so as to harmonize them and give full effect to the authors' intent. See *Dickinson Public School District No. 1 v. Scott*, 252 N.W.2d 216 (N.D. 1977). In order to glean an understanding of what the City intended to require when it used the word "permit" in the dog-at-large ordinance, we examine how the term is used in other ordinances in Title 3 of the Bismarck City Ordinances. See *State ex rel. Workmen's Compensation Fund v. E.W. Wylie Co.*, 79 N.D. 471, 58 N.W.2d 76 (1953).

Section 3-01-10 of the City of Bismarck Code of Ordinances provides:

"It is unlawful for any person to *allow or permit* any animal owned by or under his control to run at large within the city. This section does not apply to dogs and cats, which are subject to the provisions of Chapter 3-03." [Emphasis added.]

If we are to give full effect to the wording of these ordinances, we must closely consider the phrasing of each. *State ex rel. Olson v. Bakken*, 329 N.W.2d 575 (N.D. 1983). In the "dog at large" ordinance the authors simply use the word "permit," whereas in the "animal at large" ordinance the City uses the language "allow or permit." It therefore is apparent that the City intended the "animal at large" ordinance to be broader than the "dog at large" ordinance. *A Dictionary of Modern Legal Usage*, B. Garner (1987), defines "allow" and "permit" as follows:

"These words have important connotative differences. *Allow* suggests merely the absence of opposition, or refraining from an absolute proscription. *Permit*, in contrast, suggests affirmative sanction or approval."

The use of the word "permit" in ordinance 3-03-05 and the use of the phrase "allow or permit" in ordinance 3-01-10 implicitly appear to adopt Garner's definition of the words. We therefore find that the City, in using the words "allow or permit" in its animal-at-large ordinance, but using solely the word "permit" in its dog-at-large

ordinance, requires some level of culpability in the dog-at-large ordinance.

Because the word "permit" is capable of being construed to require some level of culpability, and because the City introduced no evidence of culpability at the trial, the conviction is reversed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.