STATE of North Dakota, Plaintiff and Appellee,

v.

Gordon Neal GRENZ, Defendant and Appellant.

Cr. No. 880080.

Supreme Court of North Dakota.

March 28, 1989.

Allen M. Koppy, State's Atty., Mandan, for plaintiff and appellee.

David Alan Dick, Mandan, for defendant and appellant.

VANDE WALLE, Justice.

Gordon Grenz appealed from a judgment of conviction of driving under suspension in violation of Section 39–06–42, N.D.C.C. We affirm.

In 1984 Grenz pleaded guilty to a charge of driving under the influence of intoxicat-

ing liquor in South Dakota. Consequently, Grenz was required to provide proof of future financial responsibility under Chapter 39–16.1, N.D.C.C.[1] Grenz requested his insurance company to file proof of financial responsibility and the insurance company did so until October 1986.

On December 21, 1986, Grenz received notice from the North Dakota driver's license division that his North Dakota driving privileges had been suspended because of failure to provide proof of financial responsibility since October 1986. Again, on July 6, 1987, Grenz received notice stating that his license was suspended in December 1986 and continued to be suspended. On July 8, 1987, Grenz was arrested in North Dakota and charged with driving under suspension in violation of Section 39–06–42.

Grenz filed a motion to dismiss the charge asserting that he was charged under the wrong statute. The record does not reflect the trial court's action, if any, on the motion.[2] A jury trial was held and Grenz was found guilty of driving under suspension in violation of Section 39–06–42. Grenz appealed.

Section 39–06–42(1), N.D.C.C., provides:

"1. *Except as provided in chapters 39–16 and 39–16.1 and section 39–06.1–11,* any person who drives a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state while that person's license or privilege so to do is suspended or revoked is guilty of a class B misdemeanor." [Emphasis added.]

The effect of the section's "except as provided" language is central to the parties' contentions. Grenz contends that his conviction for violating Section 39–06–42 should be reversed because the "except as

---

1. Grenz was required to provide proof of financial responsibility pursuant to Chapter 39–16.1, N.D.C.C., which "appl[ies] with respect to any person who has been convicted of ... certain offenses under motor vehicle laws, whose operator's license has been revoked or suspended ..." Sec. 39–16.1–01, N.D.C.C.

2. Both the record and the partial transcript failed to disclose any action of the trial court on the motion to dismiss. Both parties assert, however, that after a hearing on the matter, the motion to dismiss was denied.

provided" language makes the section inapplicable to persons whose driving privileges were suspended because of failure to provide proof of financial responsibility under Chapter 39–16.1. His argument is that Chapter 39–16.1 applies to persons driving under suspension when the suspension arises from the failure to provide proof of financial responsibility and that he should have been charged with violating Section 39–16.1–21.[3]

The State defends its reliance on Section 39–06–42, arguing that it is a general-penalty statute that applies in all cases of driving under suspension. The State asserts that Section 39–06–42 lacks limiting language that would restrict its application only to violations of Chapter 39–06. The State urges that the statute's "except as provided" language should be interpreted to mean that except when a driver is permitted to operate a vehicle after his license is suspended [see, e.g., Section 39–06.1–11(3) ], one who drives with his license suspended is guilty of a Class B misdemeanor under Section 39–06–42.

The dispositive issue on appeal is whether a person whose driving privileges were suspended because of failure to provide proof of financial responsibility under Chapter 39–16.1 may be convicted for driving under suspension in violation of Section 39–06–42.

In construing a statute, we look first to the language of the statute and, if the intent of the statute is apparent from its face, there is no room for construction

thereof.[4] E.g., *First Realty, Inc. v. Meide & Son, Inc.*, 422 N.W.2d 375 (N.D.1988). When the statute is clear and unambiguous, it is improper for the court to attempt to construe the provision so as to legislate that which the words of the statute do not themselves provide. *Haider v. Montgomery*, 423 N.W.2d 494 (N.D.1988).

We agree there is no ambiguity in the statute. Although it is well settled that penal statutes are subject to a strict construction, i.e., that the statutes are to be interpreted strictly against the State and liberally in favor of the accused [e.g., *City of Bismarck v. Sholy*, 430 N.W.2d 337 (N.D.1988) ], such a rule of construction is founded not on some pedantic, abstract ideal; rather,

"its object is to establish a certain rule, by conformity to which mankind would be safe, and the discretion of the court limited. A further policy behind this canon of construction is to provide a standard which, if followed, will avoid penalty." 73 Am.Jur.2d *Statutes*, Sec. 293, citing *United States v. Harris*, 177 U.S. 305, 20 S.Ct. 609, 44 L.Ed. 780 (1900).

See also *State v. Johnson*, 417 N.W.2d 365 (N.D.1987).

The conduct of which Grenz was convicted clearly violated the plain provisions of Section 39–06–42(1), i.e., he drove a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use while his license to do so was suspended. The reason that his

3. Section 39–16.1–21(1) provides:

"1. It is a class B misdemeanor for any person whose license or nonresident's operating privilege has been suspended or revoked under this chapter to drive any motor vehicle upon any highway except as permitted under this chapter during such suspension or revocation."

4. Because the intent of the statute is apparent from its face, we do not resort to the legislative history in order to construe the statute. If we were to refer to the legislative history it would not be helpful. Section 39–06–42 was amended in 1975 by Senate Bill 2039 (Section 432) as a result of a Legislative Council interim study. That bill inserted the "except" language in the statute, deleted the penalty language that provided a person who violated the statute would

be "punished by imprisonment for not less than two days nor more than six months and there may be imposed in addition thereto a fine of not more than five hundred dollars," and specified the violation as a Class B mindemeanor. The bill, found in Chapter 106, 1975 N.D. Laws, amended 672 sections of the North Dakota Century Code and repealed numerous other sections. Its purpose was threefold: to reclassify all criminal sections outside Title 12.1 of the N.D.C.C.; to delete or repeal those criminal statutes currently in force which were outmoded or unnecessary; to repeal or amend existing sections in favor of the general criminal sections contained in the new Criminal Code. See page 121 of the 1975 Report of the Legislative Council. No section-by-section analysis was attempted by the interim committee or the legislative committees which considered the bill.

license was suspended is immaterial to the conduct which the statute prohibits.

The "except as provided" language does not, as Grenz urges, make the statute ambiguous. As the State contends, the apparent import of the language is to exclude those persons whose licenses have been suspended or revoked but who are permitted temporary driving privileges by provisions such as Sections 39–06.1–11 or 39–16.-1–04(2), N.D.C.C. To ascribe any other meaning to the language would require us to conclude that the Legislature intended to exclude from Section 39–06–42(1) acts that are in clear violation of the wording of that statute in order to make those same acts a violation of Sections 39–16–30 and 39–16.1–21, although the penalty for the violation of the three statutes is the same. The more logical and much less tortured interpretation of the statute is that the exclusion refers to a person whose license has been suspended or revoked but is nevertheless permitted to drive as a result of the issuance of a temporary-restricted license under Section 39–06.1–11 and, presumably, Section 39–16.1–04(2).

We decline to adopt the former interpretation, for it is an unwarranted and strained interpretation of the statute.

Not only does Grenz attempt to exclude himself from criminal responsibility for conduct clearly prohibited by the statute, he invokes the protection of an exception to a general law. To do so he must show himself clearly within the terms of the exception for, although exceptions in statutes are to be strictly, but reasonably, construed, they extend only so far as their language fairly warrants and all doubts are to be resolved in favor of the general provisions rather than the exception. *State v. Peters*, 334 N.W.2d 217 (S.D.1983). See also *Knoepfle v. Suko*, 108 N.W.2d 456 (N.D.1961). Further, the rule of law should not be interpreted so as to benefit or reward the wrongdoer. *Fischer v. Knapp*, 332 N.W.2d 76 (N.D.1983). Moreover, the interpretation urged upon us by Grenz would create rather than resolve ambiguity. For example, Section 39–06–42(1) prohibits a person whose license is sus-

pended or revoked from operating a motor vehicle "on a highway or on public or private areas to which the public has a right of access for vehicular use." Sections 39–16–30 and 39–16.1–21 prohibit a person whose license is suspended or revoked under Chapters 30–16 or 30–16.1, respectively, from operating a motor vehicle "upon any highway." If a person whose license has been suspended or revoked under either of those chapters drives upon a highway [see definition of "highway" in Section 39–01–01(24)], is he guilty of violating those respective sections but not guilty of violating those sections if he drives "on a public or private area to which the public has a right of access for vehicular use"? Or, if he drives not on a highway but on a public or private area to which the public has a right of access for vehicular use, is he guilty of violating Section 30–06–42 because that act is not excluded by that statute, i.e., driving without a license on an area to which the public has a right of access for vehicular travel is not prohibited by Chapters 39–16 and 39–16.1 and therefore is not excluded from scope of Section 39–06–42(1)? The canons of judicial construction neither require nor recommend such an exercise in statutory gymnastics, for we construe statutes to avoid ludicrous and absurd results. *State v. Mees*, 272 N.W.2d 61 (N.D.1978).

Finally, if any attempt is made to charge Grenz, or persons in similar situations, under Section 39–16:1–21, the complaint would necessarily be dismissed because it would constitute double jeopardy, i.e., all the elements of the offense defined by Section 39–06–42(1) would be included in the charge of a violation of Section 39–16.1–21. *State v. Weisz*, 356 N.W.2d 466 (N.D.1984); 21 Am.Jur.2d *Criminal Law*, Sec. 266.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and GIERKE, J., concur.

LEVINE, Justice, dissenting.

I dissent because I believe that NDCC § 39–06–42(1) is inapplicable to a person whose driver's license is suspended under NDCC ch. 39–16.1.

The majority concludes that the language of NDCC § 39–06–42(1) is clear and unambiguous on its face but then spends several pages interpreting it. A statute is ambiguous when it is susceptible of different, yet reasonable, meanings. *State v. Silkman*, 317 N.W.2d 124 (N.D.1982); *Apple Creek Township v. City of Bismarck*, 271 N.W.2d 583 (N.D.1978). I believe that the State and the defendant each posit a different, yet reasonable meaning of the "except as provided" language of NDCC § 39–06–42(1), thus making the statute ambiguous. I would therefore resort to the statute's legislative history to ascertain the legislative intent. *See* NDCC § 1–02–39; *Ladish Malting Co. v. Stutsman County, Etc.*, 351 N.W.2d 712, 719 (N.D.1984).

The majority dismisses as unhelpful the legislative history. To the contrary, the legislative history sheds enough light to convince me that a person whose driver's license is suspended for failure to provide proof of financial responsibility under NDCC ch. 39–16.1 may not be convicted for driving under revocation under NDCC § 39–06–42.

NDCC § 39–06–42 was amended in 1975 by Senate Bill No. 2039 with the addition of the language "[e]xcept as provided in chapters 39–16 and 39–16.1 and section 39–06.1–11." S.B. 2039, 45th Legislature, 1975. The Senate Judiciary Minutes of February 3, 1975 state that Senate Bill No. 2039 "amends or repeals all sections which presently define crimes or provide criminal penalties for offenses defined in other sections." The minutes include the explanation of John Graham, Legislative Council staff, that the bill repealed outdated sections of the Code or sections already covered in the new Criminal Code, eliminated repetition, and "consolidate[d] crime sections that dealt with the same problem."

The objective of Senate Bill 2039 was to eliminate repetition and consolidate sections "that dealt with the same problem."

Yet, the penalty provisions of chapters 39–16 and 39–16.1 were not consolidated with § 39–06–42 as one might expect if indeed the former sections were viewed as dealing with the same problem as the latter, and if § 39–06–42 is, as the majority concludes, a general penalty section. Instead, the legislature amended § 39–06–42 to except from its coverage chapters 39–16, 39–16.1 and § 39–06.1–11. This indicates to me that the legislature intended to preserve chapters 39–16 and 39–16.1 as separate and distinct from § 39–06–42.

Further, it is presumed that the legislature does not perform idle acts. *See Keyes v. Amundson*, 343 N.W.2d 78, 83 (N.D. 1983). Therefore, if one concludes, as the majority does, that NDCC § 39–06–42 is a general penalty section encompassing violations of chapters 39–16 and 39–16.1, why did the legislature provide and preserve a separate penalty section for NDCC ch. 39–16.1 in § 39–16.1–21, and for NDCC ch. 39–16 in § 39–16–30?

The majority attaches significance to the fact that the penalties for driving under suspension under NDCC §§ 39–06–42 and 39–16.1–21 are presently the same. However, from the time of their enactment until amended in 1975, the penalties of the two sections differed.[1] *Compare* 1935 S.L., ch. 175, § 15; 1943 R.C. § 39–0620; 1943 R.C. § 39–0642 (1957 Supp.) *with* 1939 S.L., ch. 167, § 35; 1943 R.C. § 39–1454, 1943 R.C. § 39–1630 (1957 Supp.); 1967 S.L., ch. 313, § 2. Therefore, historically, the legislature intended NDCC § 39–06–42 and NDCC § 39–16.1–21 to function independently. This suggests that the legislature intended violations of chapter 39–16.1 be governed by the separate penalty provision of § 39–16.1–21, not § 39–06–42.

The benefit of any doubt in the meaning of a criminal statute should inure to a favorable construction for the defendant, not the State. *State v. Hogie*, 424 N.W.2d

1. When enacted in 1935 as 1935 S.L., ch. 175, § 15, NDCC § 39–06–42 provided that a violation was a misdemeanor punishable by imprisonment for not more than one year or by a fine of not over $500, or by both fine and imprisonment. *See* 1913 Comp.Laws § 9205. When enacted in 1939 as 1939 S.L., ch. 167, § 35, NDCC § 39–16.1–21 provided a penalty of imprisonment for not less than seven days or more than six months, and in addition a fine of not more than $500.

630, 635 (N.D.1988); *City of Bismarck v. Sholy,* 430 N.W.2d 337, 338 (N.D.1988). If a defendant is charged under an inapplicable statute, his conviction must be reversed. *See Luster v. State,* 746 P.2d 1159 (Okla.Cr.App.1987); *People v. Pringle,* 151 Cal.App.3d 854, 199 Cal.Rptr. 27 (1984); *State v. Trujillo,* 106 N.M. 616, 747 P.2d 262 (1987); *Walmsley v. State,* 35 Md.App. 148, 370 A.2d 107 (1977); *State v. Sonderleiter,* 251 Iowa 106, 99 N.W.2d 393 (1959) (reversed conviction under state's financial responsibility statute where defendant's license was revoked following DUI conviction under operator's license chapter; penalties under both statutes were the same). *Cf. State v. Hogie, supra* (affirmed dismissal of information improperly charging auto theft as a class B felony instead of a class C felony).

I am puzzled by the majority's apparent concern that reversing the conviction would let Grenz go scot-free because of double jeopardy. I am unaware of any precedent that says we construe a statute so as to ensure affirmance of a conviction. I really do not believe that the majority suggests that a construction which reverses a conviction is a ludicrous or absurd result. Whether or not double jeopardy prevents retrial is irrelevant.

In light of the ambiguity of NDCC § 39–06–42(1), its legislative history, and the rules of statutory construction, I would hold that one violating NDCC ch. 39–16.1 may not be convicted of a violation of NDCC § 39–06–42.

Accordingly, I respectfully dissent.

MESCHKE, J., CONCURS.