# MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY *v.* McCANN.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 11. Argued October 11, 1898. — Decided May 22, 1899.

Section 944 of the Revised Statutes of Missouri of 1889, provided that, "Whenever any property is received by a common carrier to be transferred from one place to another, within or without this State, or when a railroad or other transportation company issues receipts or bills of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained." In commenting on this statute the Supreme Court of Missouri said: "The provision of the statute is that 'wherever property is received by a common carrier to be transferred from one place to another.' This language does not restrict, but rather recognizes the right of the carrier to limit its contract of carriage to the end of its own route, and there deliver the property to the connecting carrier. There can be no doubt, then, that under the statute, as well as under the English law, the carrier can, by contract, limit its duty and obligation to carriage over its own route." *Held,* That the statute as thus interpreted could not be held to be repugnant to the Constitution of the United States.

THE statement of the case will be found in the opinion of the court.

*Mr. George P. B. Jackson* for plaintiff in error.

*Mr. J. H. Rodes* for defendants in error. *Mr. R. B. Bristow* and *Mr. Charles E. Yeater* were on his brief.

MR. JUSTICE WHITE delivered the opinion of the court.

A statute of the State of Missouri, found in the Revised Statutes of that State, 1889, c. 26, reads as follows:

"SEC. 944. Whenever any property is received by a common carrier to be transferred from one place to another, within or without this State, or when a railroad or other transportation company issues receipts or bills of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage. or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained."

Whilst this statute was in force the defendants in error .shipped from Stoutsville in the State of Missouri, on the line of the Missouri, Kansas and Texas Railway, to Chicago, Illinois, which was beyond the line of that road, ninety-nine head of cattle. At the time of the shipment a bill of lading was delivered to the shippers. The portions of the contract pertinent to the questions here arising for consideration are as follows:

"This agreement made between George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas and Texas Railway, parties of the first part, and M. B. Smizer, party of the second part, witnesseth that whereas the receivers of the Missouri, Kansas and Texas Railway transport the live stock as per above rules and regulations, and which are hereby made a part of this contract, by mutual agreement between the parties hereto; now, therefore, for the consideration and mutual covenants and conditions herein contained, said party of the first part is to transport for the second party the live stock described below, and the parties in charge thereof, as hereinafter provided, namely: six cars said to contain 95 head of cattle m. or l. o. r. from Stouts-

ville Station, Missouri, to Chicago, Illinois, station, consigned to Brown Bros. & Smith, care Union stock yards at Chicago, Illinois, at the through rate of 17½c. per hundred pounds, from Stoutsville, Missouri, to Chicago, Illinois, subject to minimum weights applying to cars of various lengths as per tariff rules in effect on the day of shipment, the same being a special rate, lower than the regular rates, or at a rate mutually agreed upon between the parties, for and in consideration of which said second party hereby covenants and agrees as follows :

"1st. That he hereby releases the party of the first part from the liability of common carrier in the transportation of said stock, and agrees that such liability shall be that of a mere forwarder or private carrier for hire. He also hereby agrees to waive release, and does hereby release, said first party from any and all liability for and on account of any delay in shipping said stock, after the delivery thereof to its agent, and from any delay in receiving same after being tendered to its agent."

&ast;        &ast;        &ast;        &ast;        &ast;

"4th. That the said second party for the consideration aforesaid, hereby assumes, and releases said first party from risk of injury or loss which may be sustained by reason of any delay in the transportation of said stock caused by any mob, strike, threatened or actual violence to person or property, from any source ; failure of machinery or cars, injury to track or yards, storms, floods, escape or robbery of any stock, overloading cars, fright of animals, or crowding one upon another, or any and all other causes except the negligence of said first party, and said negligence not to be assumed, but to be proved by the said party of the second part."

&ast;        &ast;        &ast;        &ast;        &ast;

"13th. And it is further stipulated and agreed between the parties hereto, that in case the live stock mentioned herein is to be transported over the road or roads of any other railroad company, the said party of the first part shall be released from liability of every kind after said live stock shall have left its road, and the party of the second part

hereby so expressly stipulates and agrees, the understanding of both parties hereto — that the party of the first part shall not be held or deemed liable for anything beyond the line of the Missouri, Kansas and Texas Railway, excepting to protect the through rate of freight named herein."

When this bill of lading was executed an ancillary agreement was indorsed thereon, as follows:

"We, the undersigned persons in charge of the live stock mentioned in the within contract, in consideration of the free pass furnished us by the Missouri, Kansas and Texas Railway, Geo. A. Eddy and H. C. Cross, receivers, and of the other covenants and agreements contained in said contract, including rules and regulations at the head thereof and those printed on the back thereof, all of which for the consideration aforesaid are hereby accepted by us and made a part of this contract, and of the terms and conditions, of which we hereby agree to observe and be severally bound by, do hereby expressly agree that during the time we are in charge of said stock, and while we are on our return passage, we shall be deemed employés of said receivers of the Missouri, Kansas and Texas Railway, for the purposes of said contract stated, and that we do agree to assume, and do hereby assume, all risks incident to such employment, and that said receivers shall in no case be liable to us for any injury or damages sustained by us during such time for which it would not be liable to its regular employés.

(Signed)     J. O. RICHART.<br>M. B. SMIZER."

The cattle were transported over the line of the Missouri, Kansas and Texas Railway to Hannibal, Missouri, and from that point the cars in which they were contained passed to the line of the Wabash Railway destined for Chicago. At or near Chicago an unreasonable delay was occasioned in the transportation of the cattle by the negligence of employés of the Wabash Railway, resulting in damage, for which the shippers subsequently brought an action against the receivers of the Missouri, Kansas and Texas Railway to recover for the breach

of the contract of shipment. Judgment having been entered upon the verdict of a jury in favor of the plaintiffs, an appeal was prosecuted by the receivers to the Supreme Court of the State, and was heard in division No. 2. There was a judgment reversing the lower court, and a motion for a rehearing was denied. Between the time of the decision of the Supreme Court and the overruling of the motion for a rehearing both the receivers had died, and the railway company had resumed possession of its road. This fact having been called to the attention of the Supreme Court, the railway company was substituted as appellant instead of the receivers, and a rehearing was ordered. The case was transferred to the court in banc, and was argued before that tribunal. Thereafter a decision was rendered affirming the judgment of the trial court, and motion for a rehearing was denied. 133 Missouri, 59. The case was then brought by writ of error to this court.

By the assignments of error it is asserted, and in the argument at bar it has been strenuously urged, that the Missouri statute above quoted is in conflict with the Constitution of the United States, because it is a regulation of commerce between the States, and that the Supreme Court of Missouri hence erred in giving 'effect to the statute in the decision by it rendered. The statute as interpreted by the Supreme Court is asserted to operate to deprive the railway of the power of making a through shipment of interstate commerce business over connecting lines, without becoming liable for the negligence of the connecting carriers. In other words, the argument is that the effect of the Missouri statute, as interpreted by the highest court of that State, is to deprive a railway company, transacting the business of interstate commerce, of all power to limit its liability to its own line, and, hence, compels it, if interstate commerce is engaged in or a through bill of lading for such traffic is issued, to become responsible for the articles carried throughout the entire route, thereby entailing upon the carrier receiving the goods the risk of negligence by other carriers along the line, even although such lines are situated beyond the State in which the contract was made or the business originated. This, it is insisted, is a direct

burden imposed by the State upon interstate commerce, since it forbids a carrier from engaging in that commerce, unless it subjects itself to a liability for the faults of others, against which it cannot guard and for which it was not previously liable, and, moreover, by necessary effect, punishes the carrier for issuing a through bill of lading for interstate commerce, thereby tending to discourage the through transportation of merchandise from State to State, and having a direct and inevitable tendency to defeat the portion of the provisions of the sixth section of the act to regulate commerce, as amended March 2, 1889, c. 382, 25 Stat. 855, referring to the subject of joint rate of tariffs over continuous roads of different carriers, and the seventh section of the original act, approved February 4, 1887, c. 104, 24 Stat. 382, which was designed to cause the carriage of freight to be continuous from the place of shipment to the place of destination.

The contention advanced in these several propositions is, however, without foundation, from the fact that it proceeds upon an erroneous assumption of the purport of the Missouri statute in question, since the Supreme Court of Missouri, in applying that statute in the case before us, has, in the most positive terms, declared that it was not intended to and did not prevent a carrier engaged in interstate commerce traffic from limiting his liability to his own line, and that far from doing this the statute left the carrier the amplest power to make such limitation in receiving goods for interstate carriage and in issuing a through bill of lading therefor. In commenting on the statute the court said:

"The provision of the statute is that 'wherever property is received by a common carrier to be transferred from one place to another.' This language does not restrict, but rather recognizes the right of the carrier to limit its contract of carriage to the end of its own route, and there deliver the property to the connecting carrier.

"There can be no doubt, then, that under the statute, as well as under the English law, the carrier can, by contract, limit its duty and obligation to carriage over its own route."

Again, in summing up its conclusions, the court said:

" We are unable to see, as contended by defendant, that the construction we give this statute makes it repugnant to that provision of the Constitution of the United States, which gives to Congress alone the power to regulate commerce among the States.

" The act in no way operates as a regulation of trade and business among the States. No burden or restriction on transportation is imposed. Carriers are left free to make their own contracts in regard to compensation for their services for transportation between the States, subject to Congressional regulations."

The reasoning now relied on then is, that, although the Supreme Court of the State of Missouri has interpreted the statute of that State as not depriving a carrier of power, on receiving an interstate shipment, to limit its liability to its own line, this court should disregard the interpretation given to the state statute, by the court of last resort of the State, and hold that the statute means the very contrary of its import, as declared by the Supreme Court of the State, and upon such construction decide that the state law is repugnant to the Constitution of the United States. But the elementary rule is that this court accepts the 'interpretation of the statute of a State affixed to it by the court of last resort thereof. *Sioux City Trust Company* v. *Trust Company*, 172 U. S. 642, and authorities there cited.

It is urged, however, that even although it be conceded that the Supreme Court of Missouri has interpreted the statute in question, in an abstract sense, as not depriving a railway company of the power to limit its liability to its own line when receiving goods for interstate shipment, the court has nevertheless given the statute practical enforcement as if it meant exactly the contrary of the interpretation affixed to it. In other words, the proposition is, although the Supreme Court of Missouri has declared that the statute did not deprive a carrier of its right to limit its liability to its own line, yet it has, as a necessary consequence of its application of the statute to the bill of lading in controversy in this cause, given to the statute the very meaning which it expressly declared it

had not.   An examination, however, of the opinion of the Supreme Court of Missouri demonstrates that it is not justly susceptible of the construction thus placed upon it.   Analyzing the opinion of the court, it results that the court decided that whilst the statute left a railway company ample power to restrict its liability by contract, both as to carriage and as to liability for negligence, to its own line, the purpose embodied in the statute was to regulate the form in which the contract should be expressed, so as to require the carrier to embody the limitation directly and in unambiguous terms in the portion of the agreement reciting the contract to transport, and not to import or imply such limitation by way of exception or statements of conditions and qualifications, requiring on the part of the shipper a critical comparison of clauses of the contract, in order to reach a proper understanding of its meaning. That is to say, that the restraint imposed by the statute was not a curtailment of the power to limit liability to the line of the carrier accepting the freight, but a regulation of the form in which the contract having that object in view should be drawn.

Considering the statute as thus interpreted by the Supreme Court of the State of Missouri, it cannot be held to be repugnant to the Constitution of the United States.   The subject of the power of the States to legislate as to the mere form of contracts for interstate commerce carriage was fully considered in *Richmond & Alleghany Railroad* v. *Patterson Tobacco Co.,* 169 U. S. 311.   In that case the court said (p. 314):

"The distinction between a law which forbids a contract to be made and one which simply requires the contract when made to be embodied in a particular form, is as obvious as is the difference between the sum of the obligation of a contract and the mere instrument by which their existence may be manifested.   The contract is the concrete result of the meeting of the minds of the contracting parties.   The evidence thereof is but the instrument by which the fact that the will of the parties did meet is shown."

\*          \*          \*          \*          \*

Of course, in a latitudinarian sense any restriction as to the

evidence of a contract, relating to interstate commerce, may be said to be a limitation on the contract itself. But this remote effect, resulting from the lawful exercise by a State of its power to determine the form in which contracts may be proved, does not amount to a regulation of interstate commerce. The principle on this subject has been often stated by this court, and, indeed, has been quite recently so fully reviewed and applied that further elaboration becomes unnecessary." ·

But it is pressed that, conceding the statute to have the purport given it by the Missouri court, nevertheless it does not come within the rule announced in the case just referred to, because the requirement of the Missouri statute, as interpreted, is so unreasonable as to amount in substance to a denial of the right of a carrier to confine by contract his duty of carriage and his liability for negligence to his own line. If the regulation of the statute be equivalent to a denial of the right to so limit, this court, it is asserted, must consider its substantial results, and not its mere theoretical significance. This contention, however, is also without a solid basis to rest upon. The requirement as to form held to be valid in *Richmond & Alleghany Railroad* v. *Patterson Tobacco Co.*, *supra*, was that every contract confining the liability upon an interstate shipment to the line of the receiving carrier should be signed by the shipper or be invalid. The manifest intent of such a regulation was to protect the shipper, by having it clearly manifested by his signature that his attention had been directed to the contract limitation of liability, so that no question might arise of inadvertence on his part in delivering the merchandise and accepting the contract for its carriage, which is usually prepared by the railroad company receiving goods for transportation. Whilst differing in form of requirement, the exaction that the carrier, in unambiguous terms, in the portion of the contract acknowledging the receipt of the goods and expressing the obligation to transport, should state the limitation of his obligation as a carrier to his own line, but effectuates the purpose designed by the Virginia statute, which was upheld in the *Patterson case*.

If the bill of lading in the case before us did not contain a

positive statement of an obligation by the receiving carrier to transport from the point of shipment to the ultimate destination of the cattle, of course it would not come under the control of the statute. But as, on the contrary, the contract contains an expression of such obligation, limited by reference solely to subsequent conditions inserted in the bill of lading, it is plainly brought within the import of the statute as interpreted by the Missouri court. It would have been within the power of the receivers of the Missouri, Kansas and Texas Railway to have stipulated that the goods were received, to be transported by them from Stoutsville to the termination of the line of railway operated by the receivers, and there to be delivered to a connecting carrier, who was to complete the transportation. If this had been done, the bill of lading would have had the plain import which the statute requires; nothing would have been left for construction, and the contract would have conveyed its obvious significance to the shipper who accepted it from the carrier. Because, instead of doing this, the carrier chose, in the body of the bill of lading, to stipulate that they were "to transport for the second party the live stock described below, and the parties in charge thereof as hereinafter provided, namely: six cars said to contain 95 head of cattle m. or l. o. r. from Stoutsville Station, Missouri, to Chicago, Illinois, station, consigned to Brown Bros. & Smith, care Union stock yards at Chicago, Illinois, at the through rate of 17½c. per hundred pounds, from Stoutsville, Missouri, to Chicago, Illinois," thus carving out the limitation with respect to carriage, if any, by reference to subsequent conditions, it cannot be reasonably complained that the contract is governed by the statute. The ancillary agreement which was indorsed on the bill of lading, it is to be noted, adds cogency to this view, since it declares that during the whole length of the transit the parties who were to be in charge of the cattle should be deemed employés of the receivers of the Missouri, Kansas and Texas Railway, the initial carrier, and that they should have no right to recover in the event of an injury or damage sustained for which the receivers would not be liable to their regular employés.

To assert that because there is a liability arising from the application of the statute to the bill of lading which would not result from the bill of lading itself, therefore the statute must necessarily have been held to impose on the carrier a liability for an interstate shipment beyond its own line, is without merit. True, if there had been no statute regulating the form of the bill of lading, and we were called upon to construe the instrument, we might consider that the limitations referred to in the contract restricted the liability of the carrier to his own line. This result, however, is rendered impossible in view of the statute, not because from its provisions a liability is imposed, but because of the failure of the contract to conform to the requisites of the statute. Such was the exact condition in the *Patterson case, supra,* for it cannot be doubted that if in that case there had been no statute requiring the signature of the shipper to a contract limiting liability, a contract not signed by the shipper containing an exemption would have been efficacious. But, as the statute required the signature, the contract, unsigned by the shipper, was ineffective to relieve the carrier from a liability stipulated against, it is true, but which was inoperative because not expressed in legal form. Such is, in substance, the situation here presented.

*Judgment affirmed.*

Mr. Justice Harlan dissented.