**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bradley Hal LARSON, Defendant and Appellant.**

**Cr. No. 910215.**

Supreme Court of North Dakota.

Jan. 9, 1992.

Jerome L. Renner, States Atty., Steele, for plaintiff and appellee.

James A. Wright of Weiss, Wright, Paulson & Merrick, Jamestown, for defendant and appellant.

VANDE WALLE, Justice.

Bradley Hal Larson appealed from a judgment of conviction for driving a motor vehicle while under the influence of intoxicating liquor in violation of section 39–08–01, NDCC. We affirm.

At Larson's trial, the following stipulated facts were submitted to the court. Larson and two others were traveling from Hebron to Jamestown in a bus towing a pickup and another vehicle. The bus, which was driven by Dan Quigley, broke down. The party continued its journey with Larson steering the bus and Quigley pushing the bus with the pickup. The pickup over-heated and the party stopped. While the pickup cooled, Larson and the others drank alcohol. Later, they resumed their journey.

The caravan was stopped by an officer of the North Dakota Highway Patrol. At that time, Larson was again steering the bus and Quigley was again driving the pickup which was pushing the bus. Larson controlled the steering and brakes of the bus. Quigley controlled the pickup and, incidentally, had the keys to the bus in his pocket. The motor of the bus was inoperable. After failing field sobriety tests, Larson was given a blood-alcohol test. Larson's blood-alcohol content was .19 percent by weight.

The issue in this case is whether Larson's control of the bus while it was

being pushed by another vehicle constituted "driving" under section 39–08–01, NDCC. Larson was convicted of driving under the influence of alcohol (DUI); he was neither charged nor convicted of being in actual physical control of a vehicle while under the influence (APC). The two offenses are separate crimes. *State v. Jacobson,* 338 N.W.2d 648 (N.D.1983). "Driving" is, therefore, an essential element of DUI. Larson argues that he was not the "driver" of the bus because its motor was disabled; the bus was being powered by the pickup driven by Quigley. Larson believes Quigley was the driver of the bus.

Section 39–08–01, NDCC, provides:

"1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if ... the following appl[ies]:

a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving."

Words used in a statute are understood in their ordinary sense unless they are defined by statute. NDCC §§ 1–02–02, 1–02–03; *State v. Johnson,* 417 N.W.2d 365 (N.D.1987). Chapter 39–08 does not expressly define what conduct constitutes the driving of a vehicle. The general provisions of Title 39, the motor vehicle title, define "Driver" as "every person who drives or is in actual physical control of a vehicle," section 39–01–01(15), NDCC, and "Vehicle" as including "every device in, upon, or by which any person or property may be transported or drawn upon a public highway ...," section 39–01–01(87), NDCC. Because under *Jacobson,* we distinguish one who drives a vehicle, as opposed to one who is in actual physical control of a vehicle, for purposes of section 39–08–01, these definitional provisions do not resolve the issue.

Larson's position is heightened by the comparison of the definition of "driver" with that of "operator." Section 39–01–01(44), NDCC, defines "Operator" as "every person who drives or is in actual physical control of a motor vehicle upon a highway *or who is exercising control over or steering a vehicle being towed by a motor vehicle.*" (Emphasis added). Because the bus motor was disabled and because the legislature prohibited "driving," not "operating," a vehicle, Larson contends he did not violate the statute under which he was convicted. This argument is undercut by comparing the definition of "driving" which includes the control of any *vehicle,* with that of "operating," which includes the control of any *motor vehicle,* even one under tow of another motor vehicle. *Compare* NDCC § 39–01–01(15) with NDCC § 39–01–01(44); *see also* NDCC § 39–01–01(38) [defining "motor vehicle" as self-powered vehicle]. It appears that "driving a vehicle" is intended to delimit at least as much conduct on the highways as "operating a motor vehicle," and possibly more.

What is clear from the preceding review of the statutory provisions is that the words of section 39–08–01(1), NDCC, as defined by statute, do not settle the question of what constitutes the crime of "driving a vehicle" while under the influence of alcohol. We, therefore, consider the ordinary meaning of the verb "drive" as it is used in section 39–08–01, NDCC, which is "to control the movement or direct the course of ... an automobile." *Webster's New World Dictionary of the American Language* 427 (2nd College Ed.1980). Larson steered the bus and controlled its brakes; he controlled and directed the movement of the bus.

■ We recognize that an ambiguous criminal statute should be construed in favor of a defendant. *City of Bismarck v. Sholy,* 430 N.W.2d 337 (N.D.1988). While there are other possible meanings which can be given to the verb "drive," our review of the purpose of the statute, as it has been construed in the past, makes it clear that Larson's act of steering a bus moving on a highway while he had a blood alcohol content in excess of .10 percent by weight does come within the strictures of the stat-

ute. We construe statutes to avoid a ludicrous result. *State v. Grenz,* 437 N.W.2d 851 (N.D.1989). We conclude that the construction urged by Larson would produce an absurd result.

We have said, in discussing the Actual Physical Control portion of section 39–08–01(1), NDCC, that the purpose of the statute is:

"[T]o deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers. As stated in *State v. Schuler, supra,* [243 N.W.2d 367 (N.D.1976)] the 'actual physical control' offense is a preventive measure intended to deter the drunken driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance."

*State v. Ghylin,* 250 N.W.2d 252, 255 (N.D. 1977). With APC the legislature addressed the *threat* of drunken drivers by criminalizing the conduct of those who, while drunk, maintain the potential to drive. Accordingly, we have affirmed the APC convictions of drunken drivers who had the continuing ability to control their vehicles, although they were not attempting to drive at the time of their arrests. *E.g. Fargo v. Theusch,* 462 N.W.2d 162 (N.D.1990) [driver asleep in car, keys in pocket]. With the DUI portion of the statute, the legislature has criminalized the conduct of those who actually exercise their prohibited control and pilot their moving vehicles on the highway, thereby endangering themselves and all those who encounter them in their inebriated journey.

Larson was steering the bus as it was pushed by another vehicle. Larson controlled the direction of the bus, and thus had the capacity to harm himself, Quigley, or others by failing to steer the bus safely. Larson operated the brakes, and thus had the capacity to harm himself, Quigley, or others, if he had failed to brake the forward motion of the bus in a safe manner. Larson did, in fact, "drive" a vehicle on a highway while drunk.

The judgment of the county court is affirmed.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

Justice H.F. GIERKE, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.