2000 ND 119

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Larry Gene RUBEY, Defendant and Appellant.**

**No. 990189.**

Supreme Court of North Dakota.

June 8, 2000.

Merle Ann Torkelson, State's Attorney, Washburn, ND, for plaintiff and appellee.

Gregory Ian Runge, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] A jury convicted Larry Gene Rubey of violating the sex offender registration requirement. He appealed from the conviction and from an order denying his motion to dismiss. We affirm.

[¶ 2] On May 17, 1988, Rubey pled guilty to two counts of Gross Sexual Imposition, a Class B Felony, for offenses committed in 1985 and 1986 against a child under the age of 15. Imposition of the sentence was deferred and Rubey was placed on supervised probation. In October 1990, Rubey's probation was revoked and he was sen-

tenced to five years imprisonment. Rubey was released in April 1994.

[¶ 3] In June 1996, Rubey moved to McLean County, specifically 321 Main Avenue in Washburn, N.D. The McLean County Sheriff's Office advised Rubey to register as a sex offender. Rubey registered on August 3, 1996. At that time, Rubey signed a form acknowledging, among other things, he understood: "if I should make any change at all in my address, I must notify this same law enforcement agency of my intended new address within ten days of moving to that new address."

[¶ 4] In March 1997, Rubey was ordered to remove himself from the Washburn residence at the Washburn address under a permanent protection order. He left Washburn and did not return. He lived for a few days at the Ruth Meiers Hospitality House in Bismarck and then helped with volunteer flood relief in Fargo for a few days. Thereafter, Rubey began work as a trucker for Piper John Express Trucking Company of Mandan, N.D. Rubey asserts he lived out of his truck thereafter and did not stay at any one place for more than three or four days. In May or June of 1997 Rubey obtained a new address, P.O. Box 356, Mandan, N.D. Rubey did not notify the McLean County Sheriff's Office of any change in his address after he left Washburn.

[¶ 5] Rubey was charged with violating the sex offender registration requirement in McLean County. Rubey moved to dismiss the charge against him because the allegation against him failed to state a claim for which he could be convicted. A jury found Rubey guilty of violating the sex offender registration requirement.

I

[¶ 6] Rubey argues the district court should have dismissed the charges against him because the district court in which Rubey was convicted in 1988 failed to provide Rubey with notice of his duty to

register.[1] The issues on this appeal require us to interpret section 12.1–32–15, N.D.C.C., and determine its proper application. The interpretation of a statute is a question of law, which we fully review on appeal. *Anderson v. Hensrud,* 548 N.W.2d 410, 412 (N.D.1996).

[¶ 7] Rubey cites N.D.C.C. § 12.1–32–15(3), which provides,

> After a person has pled guilty to or been found guilty of a crime against a child or an attempted crime against a child, or after a person has pled guilty or been found guilty as a sexual offender, *the court shall impose ... a requirement that the person register,* within ten days of coming into a county in which the person resides or is temporarily domiciled....

(emphasis added).

[¶ 8] The registration requirement did not exist when Rubey pled guilty in 1988 or when his probation was revoked and he was sentenced in 1990. Consequently, the Wells County District Court did not notify Rubey or require him to register. The sex offender registration law was enacted in 1991, but has significantly evolved since then. *See* 1991 N.D. Sess. Laws ch. 136. Originally, registration was only required if a court ordered it. *Id.* Amendments in 1993 required courts to impose the registration requirement if a person was convicted as a sex offender. 1993 N.D. Sess. Laws ch. 129, § 3. The legislature amended the law in 1995 and 1997; the 1997 law applies here. Under that law, persons were required to register not only if they had been required to by a court, but if that person:

a. Is incarcerated or is on probation or parole on August 1, 1995, for a crime against a child or as a sexual offender;

b. Has pled guilty or nolo contendere to, or been found guilty of, an offense in a court of another state or the federal government equivalent to those offenses set forth in subdivisions a and c of subsection 1; or

c. Has pled guilty to or been found guilty of a crime against a child or as a sexual offender within ten years prior to August 1, 1995.

N.D.C.C. § 12.1–32–15(3) (1997).

[¶ 9] Rubey was required to register under subsection c above because he pled guilty to a crime against a child and as a sex offender within ten years prior to August 1, 1995. Thus, the statute applicable to Rubey's conviction in 1988 did not require him to register only if required to do so by a court. The statute specifically required him to register.

[¶ 10] In *State v. Burr,* 1999 ND 143, ¶ 26, 598 N.W.2d 147, a majority of this court upheld the conviction of James Burr. He had been convicted of failing to register, although Burr was never advised by a court of the registration requirement. The majority said:

> North Dakota Century Code section 12.1–32–15(3) clearly sets forth three situations under which sex offenders would still be required to register even though they had not been advised by the district court of the requirement to register, distinguishing this case from *[State v.] Breiner* [1997 ND 71, 562 N.W.2d 565].
>
> A nonregistered offender within any of the three categories added in 1995 would not have been advised by any North Dakota judge of the duty to register. Those offenders on probation or parole would have already been sentenced. Offenders convicted in other states would not have been advised by judges in those states about North Dakota's registration requirements. An offender like Burr could not have been told of the duty to register, because he had no duty until August 1, 1995....

---

1. Rubey has not mounted a constitutional attack to the statute under which he was convicted.

[Burr's] conviction stands, and the criminal conduct he is charged with in this case is failing to comply with registration provisions in light of the earlier conviction.

[¶ 11] Under the statute, the fact the Wells County District Court did not inform Rubey he was required to register does not relieve him of the obligation to register.

## II

[¶ 12] Rubey argues the conviction fails because the State did not prove Rubey changed his residence. That is, Rubey lived out of his truck and only stayed in one place for three or four days. He never had a "home," a place where he was habitually present, and which he intended to return to after being away for business or pleasure. *See Dietz v. City of Medora*, 333 N.W.2d 702, 705 (N.D.1983) (applying N.D.C.C. § 54–01–26 in defining legal residence as "the place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure").

[¶ 13] Rubey was convicted under N.D.C.C. § 12.1–32–15(6), which says, in relevant part: "If a person required to register pursuant to this section has a change in name or address, that person shall inform in writing, within ten days, the law enforcement agency with whom that person last registered of the person's new name or address." Section 12.1–32–15, N.D.C.C., uses several terms relating to address and residence, including: "address where the person expects to reside," the "county in which the person resides or is temporarily domiciled," and merely "address." In subsection six, the legislature uses "address," but does not define the term.

[¶ 14] Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. The dictionary defines "address" as "[t]he written directions on mail indicating destination" and "[t]he location at which a person or organization may be found or reached." American Heritage College Dictionary p. 15 (1997). The legislature's use of "address" rather than "residence" indicates an intent to include both mailing addresses and residential addresses.

[¶ 15] Moreover, the following analysis counsels the legislature's use of the broad term "address" was conscious, not an act without thought. North Dakota's registration statute was patterned after California's sex offender registration legislation. *Hearing on S.B. 2574 Before the House Human Services and Veterans Affairs Comm.*, 52nd N.D. Legis. Sess. (March 21, 1991) (testimony of Sen. Robinson). However, California's provision regarding change of address reads, "If any person who is required to register pursuant to this section changes his or her *residence address or location* ... the person shall inform ... the law enforcement agency or agencies with which he or she last registered of the new address or location." Cal.Penal Code § 290(f)(1). Significantly, N.D.C.C. § 12.1–32–15(6) does not copy the "residence address or location" language that California's provision uses, but simply uses "address."

[¶ 16] It is true we construe ambiguous criminal statutes in favor of the defendant. *State v. Larson*, 479 N.W.2d 472, 473 (N.D.1992). We also construe statutes to avoid a ludicrous result, *id.*, and we endeavor to effectuate the legislative purposes which prompted a law's enactment. *State v. Jelliff*, 251 N.W.2d 1, 7 (N.D.1977).

[¶ 17] The clear intent of the legislature in requiring this registration was to enable law enforcement to keep better track of sex offenders and those who commit crimes against children. In *Burr* we quoted the testimony of Assistant Attorney General Robert Bennett that stated the law's purpose was "for regulation of

the offenders required to register. The registration information provided by the listed offenders is necessary to aid in the investigation and apprehension of offenders and to protect the health, safety, and welfare of the members of the local community and citizens of this state." *Burr*, at ¶ 13 (quoting *Hearing on H.B. 1152 Before the House Judiciary Comm.*, 54th N.D. Legis. Sess. (Jan. 9, 1995)). *See Hearing on S.B. 2574 Before the House Human Services & Veterans Affairs Comm.*, 52 nd N.D. Legis. Sess. (March 21, 1991) (testimony of Jim Vukelic stating "[t]he primary purpose for this bill is law enforcement"); *Burr*, at ¶ 19 (stating "[t]he legitimate public interest in having sexual offenders register with police is to notify law enforcement of the person's presence in their community").

[¶ 18] Using address in the broader sense rather than limiting it to residence, more clearly effects the legislature's intent. It requires offenders who leave their registered address, but do not gain a new permanent residing address to nonetheless notify law enforcement of this change. Allowing sex offenders to circumvent the registration process by physically leaving one residence without technically acquiring a new residence would permit the offender to "slip through the cracks," disappear from law enforcement view and thus thwart the purpose for which this law was enacted.

[¶ 19] If an offender registered at a particular residing address permanently abandons the address, the offender must register the subsequent residing address if there is one. However, if the offender, as in this case, has no new residing address, but has a new mailing address, the offender must notify authorities of the new address. By concluding address includes mailing addresses and residential addresses, our interpretation effects the purpose of this law without unduly burdening the offender.

[¶ 20] Rubey left 321 Main Avenue in Washburn and did not return. He did not continue to use the address as a residence or a place to receive mail. Rubey further demonstrated his intent by obtaining a new mailing address in Mandan. Because we conclude the term "address" used in N.D.C.C. § 12.1–32–15(6) includes mailing addresses like Rubey's post office box address in Mandan, we affirm.

[¶ 21] DALE V. SANDSTROM and WILLIAM A. NEUMANN, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 22] If I believed N.D.C.C. § 12.1–32–15, could be constitutionally applied to Rubey, I would join in the majority's analysis and interpretation of the statutory reference to "address" set forth in Part B of the majority opinion. However, Rubey committed the felony offenses of gross sexual imposition in 1985 and 1986. Those offenses are the basis for the obligation to register as a sex offender under a statute which did not exist at the time of his offenses. For the reasons set forth in my dissent in *State v. Burr*, 1999 ND 143, 598 N.W.2d 147, I would hold the application of N.D.C.C. § 12.1–32–15 to Rubey is a violation of the ex post facto provisions of the federal and state constitutions. For this reason, I respectfully dissent.

[¶ 23] MARY MUEHLEN MARING, J., concurs.