# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3088

_____

David L. Meador

*Petitioner - Appellant*

v.

Pat Branson

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 12, 2012
Filed: August 16, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

David Meador appeals from the district court's[1] denial of his petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. He argues that the decision of the North Dakota Supreme Court,

_____

[1]The Honorable Daniel E. Hovland, United States District Judge or the District of North Dakota.

interpreting the state's sex offender registration statute to apply to sex offenders even when they have no permanent residential or mailing address, is an unforeseen and retroactive expansion of statutory language. We affirm the district court's denial of that claim, holding that the state's interpretation of its statute as applied to Meador is not a constitutional violation sufficient to meet the high standards for success under AEDPA.

I

In 1994, David Meador was convicted of sex crimes in Kentucky. Because of this conviction, when Meador moved to North Dakota in 2008, he was required to register as a sex offender pursuant to N.D. Cent. Code. Ann. § 12.1-32-15(2). In accordance with this requirement, Meador registered with the Valley City Police Department (VCPD) on August 9, 2008, listing his residence as a gas station parking lot where he was living in his truck. However, on August 14, the police evicted Meador from the parking lot.

Between the nights of August 14 and August 20, Meador did not formally register his location. The night of August 14, Meador went to a local hospital to address some breathing problems. The next day, he drove to Chataqua City Park in Valley City, but the VCPD told him to leave. Meador then went to a trailer park in Valley City, where he stayed the nights of August 15 and 16. On August 17, Meador left the trailer park and stayed on city property in the northwest part of Valley City. During the three-day period between August 15 and 17, Meador was in contact with the VCPD, telling them where he was spending the night and that he was looking for a more permanent place to stay. On August 17, an officer at the VCPD suggested he stay nearby at Lake Ashtabula.

Meador spent the night near Lake Ashtabula on August 18 and 19. On August 19, he called the VCPD and the North Dakota Attorney General's office and told both

that he did not have a place to stay. He also asked how to register as a sex offender under his particular circumstances. An officer at the VCPD told Meador that he should let police know more or less where he was living. On August 20, Meador sent a notification to the county sheriff that he was moving to Tower City, North Dakota. On August 22, Meador properly registered in that county.

Despite this, on August 20, 2008, North Dakota filed a criminal complaint against Meador, charging him with failure to comply with registration requirements in violation of N.D. Cent. Code § 12.1-32-15(7), a class C felony. The statute requires that, "upon a change of address, the individual required to register shall also register within three days at the law enforcement agency having local jurisdiction of the new place of residence, school, or employment." A jury found Meador guilty of this charge. The trial court then sentenced Meador to five years' imprisonment, plus two years' supervised release. Meador appealed his conviction and sentence to the North Dakota Supreme Court, arguing, *inter alia*, that the state district court erred and violated his due process rights in interpreting § 12.1-32-15(7) as requiring him to register within three days even though he had not obtained a residence. The state supreme court denied Meador's claims, and held that "[t]he plain language of the statute requires an individual to register within three days of a change of address." State v. Meador, 785 N.W.2d 886, 891 (N.D. 2010).

Following the state supreme court decision, Meador filed a timely pro se petition for relief under 28 U.S.C. § 2254 in federal court. His petition alleged several errors, including an ex post facto violation and a claim that "the trial court abused its discretion or authority in denying a motion to dismiss, where, the appellant did not move to a new residence for three days under N.D.C.C. 12.1-32-15(7) (2007)." Meador also filed a memorandum supporting position, which included the following question: "Whether the petitioner was denied due process of law by the State's attorney having changed the meaning of N.D.C.C. § 12.1-32-15(7) to include persons who have no residence to register?"

On August 23, 2011, a Magistrate Judge filed a Report and Recommendation. It recommended ordering Meador's petition be amended to include a due process claim based on an unexpected judicial expansion of statutory language. It then recommended denying Meador's claims and dismissing his petition, but granting a certificate of appealability on Meador's due process claim. Both parties objected to the Report and Recommendation, and the U.S. District Court adopted it, denying Meador's claims but granting the certificate of appealability on the amended claim.

II

We must first address the issue of whether Meador's claim is properly before this court. Under AEDPA, a federal court may not grant a writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A). The government argues that we should not consider Meador's habeas claim because he failed to exhaust the issue of whether the state's interpretation of § 12.1-32-15(7) was an unforeseeable and retroactive expansion of narrow and precise statutory language. To exhaust a claim in state court, a habeas petitioner "must show that he either made a fair presentation of his claims to the state courts or that he has no other presently available state remedies to pursue." Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999).

Here, Meador presented to the North Dakota Supreme Court the question of whether his conviction was a violation of his "substantial due process right to fair notice." That court characterized this argument as asserting that "the statute does not require a sexual offender [to] locate a new address within three days, but requires an offender to register a new address within three days of obtaining a new residence." Meador, 785 N.W.2d at 891. Meador also presented the facts of his case, which supported his argument that the state improperly required him to register an address when he was a transient.

In response, the North Dakota Supreme Court held:

> The plain language of the statute requires an individual to register within three days of a change of address. Meador requested the jury instructions include language from State v. Rubey, 2000 ND 119, ¶¶ 18–19, 611 N.W.2d 888, in which a majority of this Court held the word "address" under a prior version of the statute included mailing and residential addresses, and he does not argue that a different interpretation applies under the current version of the statute. Furthermore, Meador did not argue the statute is unconstitutionally vague. See Santos v. State, 284 Ga. 514, 668 S.E.2d 676 (2008) (registration statute is unconstitutionally vague as to homeless offenders because it does not provide sufficient notice of how they can comply with the registration requirement). We conclude that Meador's argument is without merit and the district court did not abuse its discretion by denying his motion to dismiss.

Id. Thus, the state supreme court ruled on the merits that the "plain language" of § 12.1-32-15(7) and Rubey required Meador to register even though he was transient, and that he was on notice of this requirement. Moreover, the court's assertion that Meador did not raise a vagueness claim appears to be referring to a claim that he did not know how to register as a transient, rather than the claim he raises here, which is that the state courts interpreted the statute in an unforeseeable and retroactive manner. Although Meador's argument—and the state's treatment of it—might not have been as fully developed as it could have been, we find that it was sufficient to fairly present his claim to the North Dakota state courts.

The state also argues that we should not consider Meador's AEPDA petition because his constitutional claim of an unforeseen and retroactive expansion was not included in his petition to the federal district court. Ordinarily, a federal district court "should not grant habeas relief to a petitioner based upon a legal theory that involves an entirely different analysis and legal standards than the theory actually alleged" in the petition to that court. Frey v. Schuetzle, 78 F.3d 359, 361 (8th Cir. 1996).

-5-

However, we relax these requirements where a petitioner represents himself pro se. Id. ("We note that as a general rule a pro se habeas petition must be given a liberal construction and that such a petitioner is not required to identify specific legal theories or offer case citations in order to be entitled to relief.").

Here, while Meador may have presented his constitutional challenge to the North Dakota sex offender registration statute somewhat inartfully, it is nevertheless sufficiently presented to the district court. In Meador's habeas petition, he presented the following question: whether "the trial court abused its discretion or authority in denying a motion to dismiss, where, the appellant did not move to a new residence for three days under N.D.C.C. 12.1-32-15(7) (2007)." In the memorandum accompanying his petition, he also presents an additional question to the court: "Whether the petitioner was denied due process of law by the State's Attorney having changed the meaning of N.D.C.C. 12.1-32-15(7) to include persons who have no residence to register?"

The facts Meador presented in both his brief and petition support the unforeseeable and retroactive judicial expansion issue that the district court considered. Meador argues that he did not register as a sex offender over the period in question because he was never in one place for longer than three days and the statute does not require registration under those circumstances. Because Meador set forth the relevant facts and outlined the alleged constitutional violation in his brief to the North Dakota Supreme Court and in his petition to the United States District Court for the District of North Dakota the district court did not err in addressing that issue on the merits.

III

We next turn to a discussion of Meador's constitutional claim on the merits. We review de novo a district court's denial of a writ of habeas corpus. Owen v.

Weber, 646 F.3d 1105, 1106 (8th Cir. 2011). A federal court may only grant a habeas petition if the decision that resulted in the state conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). Rather, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Id. at 786–87.

The Supreme Court has held that the due process rights of a criminal defendant may be violated "not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." Bouie v. City of Columbia, 378 U.S. 347, 352 (1964). Such a decision violates due process because "it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." Id. In Bouie, the Supreme Court found such a violation where the Supreme Court of South Carolina construed a criminal trespass statute to apply both when entry was prohibited in the first place, as well as when a person refused to leave after an initially lawful entry. The Court noted that, to obtain a conviction in that case, the state court had reversed ninety-five years of cases that "uniformly emphasized the notice-before-entry requirement, and gave not the slightest indication that that requirement could be satisfied by proof of the different act of remaining on the land after being told to leave." Id. at 356–57.

Meador argues that, like in Bouie, the North Dakota Supreme Court's interpretation of § 12.1-32-15(7) was an unforeseeable and retroactive expansion of statutory language. In relevant part, this statute requires that "[u]pon a change of

address, the individual required to register shall also register within three days at the law enforcement agency having local jurisdiction of the new place of residence, school, or employment." Meador asserts that this statute does not require him, as a sex offender who remains in close contact with state authorities but is transient and does not have a mailing address, to register.

For support, Meador relies primarily on State v. Rubey, 611 N.W.2d 888 (N.D. 2000). There, the North Dakota Supreme Court considered the case of a sex offender who did not register while he was living in his truck and had no permanent address except for a post office box. The court affirmed Rubey's conviction, and held:

> If an offender registered at a particular residing address permanently abandons the address, the offender must register the subsequent residing address *if there is one*. However, if the offender, as in this case, has no new residing address, but has a new mailing address, the offender must notify authorities of the new address.

Id. at 892 (emphasis added). As Meador argues, Rubey seems to indicate that the sex offender registration statute requires registration of a person's permanent "residing address" *or* his mailing address. Like Meador, the defendant in Rubey did not have a permanent residing address, but rather lived as a transient, out of his vehicle. In that case, though, because he had a P.O. box, he had some permanent address and therefore was required to register. Here, Meador had no such address.

To supplement his argument about Rubey, Meador further argues that requiring a transient sex offender to register is illogical for two reasons. First, on the sex offender registration form, there is no place to note a transient address. Second, if Meador had registered any of his addresses where he lived during this period, he could not have done so until he had left them with no plans to return, since he stayed at each for fewer than three days. Rather than providing the state with accurate

information of his whereabouts, this would have confused the issue, thus frustrating the purposes of the statute.

The state makes several arguments in response. First, it emphasizes the purpose of the sex offender registration statute. The North Dakota Supreme Court has repeatedly pointed to the registration statute's purpose of keeping "better track of sex offenders and those who commit crimes against children." Rubey, 611 N.W.2d at 891; see also State v. McAvoy, 767 N.W.2d 874, 877 (N.D. 2009); State v. Steiger, 644 N.W.2d 187, 189 (N.D. 2002). Also important is preventing sex offenders from circumventing the registration requirements:

> Allowing sex offenders to circumvent to registration process by physically leaving one residence without technically acquiring a new residence would permit the offender to "slip through the cracks," disappear from law enforcement view and thus thwart the purpose for which this law was enacted.

Rubey, 611 N.W.2d at 892. The state argues that if the North Dakota Supreme Court had interpreted the statute to only require registration when a sex offender has a "legal residence," it would be easy to evade the requirements of the statute and thus frustrate its purpose. In this vein, the state also argues that the statement in Rubey, indicating that registration is only required if a sex offender has a legal residence or a mailing address, is dicta and therefore is not necessarily an accurate statement of North Dakota law before this case. In Rubey, the defendant did have a mailing address, so unlike in Meador's case, the court did not consider what the statute required of sex offenders who had no permanent address.

In considering this case, we first note that Meador's interpretation of § 12.1-32-15(7) has some force. The Rubey case does seem to strongly indicate that a sex offender is not required to register his residence address when he is a transient. Furthermore, Meador's argument that his registration would have frustrated the

purpose of the sex offender statute by providing outdated information about his whereabouts is well-taken and is a strong counter-argument to the state's emphasis on the statute's purpose of keeping better track of sex offenders.

However, our task is not to interpret the North Dakota statute in the first instance. The issue we must decide under AEDPA and <u>Bouie</u> is not whether we agree or disagree with the state court's interpretation of its own statute. As has long been the case, "the elementary rule is that [federal courts accept] the interpretation of the statute of a state affixed to it by the court of the last resort thereof." <u>Missouri, K. & T. Ry. Co. v. McCann</u>, 174 U.S. 580, 586 (1899). We may therefore only consider whether the state court's interpretation was such an unforeseen and retroactive expansion of narrow and precise statutory language, <u>Bouie</u>, 378 U.S. at 352, that it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Meador's argument, while perhaps convincing as a matter of statutory interpretation, is not sufficiently definitive to meet these two standards. In particular, the state's argument that the North Dakota Supreme Court did not confront the same facts in <u>Rubey</u> as it was presented with in this case indicates that there is no prior uniform interpretation contrary to the state's present interpretation, as AEDPA and <u>Bouie</u> require.

Accordingly, we affirm the decision of the district court denying Meador's claim for relief under AEDPA.

_____

-10-